UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICK KRISEMAN and KERRY KRISEMAN, individually and on behalf of all similarly situated individuals,

        Plaintiffs,

v.

GENERAL MOTORS, LLC,

        Defendant.

Case No.:

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs RICK KRISEMAN and KERRY KRISEMAN, individually and on behalf of themselves and all other similarly situated individuals–i.e., the members of the Plaintiff Class described and defined within this Class Action Complaint– allege as follows:

### I.    OVERVIEW

1. This action concerns Defendant General Motors LLC's (GM) sale of defective Ultium PowerUP electric vehicle chargers which are unable to perform their marketed and intended function of properly, consistently, and safely charging electric vehicles. These defects render the chargers unfit for their ordinary purpose and substantially impair their value to reasonable consumers such as Plaintiffs.

2. The "Class Chargers" at issue are model year 2022, 2023, and 2024 GM Ultium PowerUP chargers sold either directly by GM or by GM-authorized stores and dealerships.

3. The Class Chargers have two defects. First, when users plug Class Chargers into their cars, their internal breakers often get tripped, causing the chargers to fail and the car to remain uncharged. Second, when the chargers do work, and users plug them in for overnight charge, the Chargers' plugs get so hot that they often set off car alarms. These two recurring defects prevent normal charging and create foreseeable risk of overheating during intended use.

4. GM sold the chargers to its authorized dealerships, in Florida, despite GM knowing of the defects.

5. Plaintiffs and Class Members purchased, in Florida, their Class Chargers from GM directly or from GM-authorized, Florida dealerships.

6. Plaintiffs and Class Members all paid market price for electric vehicle chargers that would function as reasonable consumers would expect an electric vehicle charger to function—i.e., to charge the vehicle properly and without tripping an internal breaker and not overheat while doing so. Instead, however, Plaintiffs and the Class members received chargers that failed to function properly and would instead trip, fail to charge, and overheat. In other words, Plaintiff and the Class Members received defective chargers, and, as such, Plaintiff and the

Class Members did not receive goods commensurate, in value, with the money they paid. This caused them to suffer harm in the form of lost money spent on the defective chargers.

7. GM knew about the defects prior to sale.

8. Plaintiffs bring claims for violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. section 501.201, et seq. and breach of warranty and seek all available equitable and legal relief to restore both Plaintiffs and similarly situated consumers to their pre-purchase positions and require Defendant to conform its conduct to the law.

## II.     PARTIES, JURISDICITON, & VENUE

9. Plaintiffs are citizens and residents of Pinellas County, Florida.

10. Defendant General Motors LLC is a Delaware limited liability company with its principal place of business at 300 Renaissance Center, Detroit, Michigan 48243. GM has three LLC members: (i) Paul Jacobson, a Michigan citizen; (ii) Mark Reuss, a Michigan citizen; and (iii) Grant Dixton, a Michigan citizen.

11. At all relevant times, Defendant conducted substantial business in Florida and cultivated a market for the sale of its products within Florida. This conduction and cultivation included advertising, distributing, and selling its electric vehicle chargers through its dealer network and other outlets in the State.

12. This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) because (1) the amount in controversy exceeds $75,000 and (2) Plaintiffs and other putative class members are citizens of a different state than Defendants.

13. Restitution and/or injunctive relief may be more certain, prompt, and efficient than legal remedies.

14. The Court has personal jurisdiction over the Defendant because Defendant GM has sufficient minimum contacts with Florida and within the Middle District of Florida to establish Defendant's presence in Florida, and certain material acts, upon which this suit is based, occurred within the Middle District of Florida. GM does substantial business in the State of Florida and within this Judicial District, is registered to do business within the State of Florida and is doing business within the State of Florida, and otherwise maintains requisite minimum contacts with the State of Florida. GM distributed Plaintiffs' Class Charger in Florida, and the charger has remained in Florida.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendant is subject to personal jurisdiction within the Middle District of Florida and a substantial part of the events or omissions giving rise to the claims asserted here occurred in this judicial district. These events include: Plaintiffs purchasing their Class Charger in Hillsborough County and experiencing the charger defects in Pinellas County. Furthermore, the Plaintiffs' Class Charger is

located in Pinellas County, and Plaintiffs reside in Pinellas County. Additionally, GM distributed Class Chargers in this District and received compensation and profits from the sale of Class Chargers in this District.

### III.　　FACTUAL ALLEGATIONS

16.　　Electric vehicle chargers are intended to charge compatible electric vehicles for extended periods–including overnight–safely and without overheating or triggering vehicle alarms.

17.　　It is commonly understood and expected within the industry, the marketplace, and by consumers that electric vehicle chargers are supposed to charge vehicles without tripping or overheating.

18.　　Ordinary reasonable consumers would find information that an electric vehicle charger is defective and unable to charge electric vehicles safely, reliably, properly, and without tripping or overheating to be important material to their purchasing decisions with respect to electric chargers.

19.　　The defects were not known to or reasonably discoverable by reasonable consumers such as Plaintiffs before purchase because they are latent and not reasonably detectable by ordinary inspection. Further, GM knowingly sold the Class Chargers in a defective condition without informing prospective purchasers, including Plaintiffs, about the defects. As such, Plaintiffs neither

knew, nor reasonably could have known, about their Class Chargers' defective condition prior to purchasing same.

20.    GM designed the Class Chargers by working with QTEK, a foreign company.

21.    GM knew of the defects.

22.    Below is a screenshot of a public internet post–from July 14, 2023– describing one of the defects, in an online Cadillac forum:



23.    On August 10, 2024, the Krisemans purchased a Class Charger from Ed Morris Cadillac in Tampa, Florida.

24.    The Krisemans experienced the defect immediately after purchasing the charger and continue to experience it to this day.

25. When they plug that charger in, the internal breaker within the charger often gets tripped, causing the charger to fail. They have to flip their house's circuit breaker, sometimes multiple times, in the hopes of getting the charger to work. The charger still often fails to work even after such efforts.

26. When the charger does work, it then sometimes overheats, so much so that causes the car's alarm to go off.

## IV.    Class Action Allegations

27. Pursuant to Fed. R. Civ. P. 23(b), Plaintiffs intend to seek certification of a Florida Class consisting of:

> **All persons who purchased—in Florida and either directly from General Motors (GM) or from a GM authorized store and/or dealership—a 2022, 2023, or 2024 model year Ultium PowerUP charger.**

28. Excluded from the Class are: GM; any affiliate, parent or subsidiary of GM; any entity in which GM has a controlling interest; any officer, director, or employee of GM; any entity in which GM has a controlling interest; any officer, director, or employee of GM; any successor or assign of GM; and anyone employed by counsel for Plaintiff in this action; any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons.

29. Plaintiffs reserve the right to modify and/or to add to the Class definition prior to class certification.

30. **Numerosity—Fed. R. Civ. P. 28(a)(1).** The members of the proposed Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable.

31. Although the precise number of Class Members is unknown to Plaintiff, upon information and belief the Class would easily number in the thousands if not tens of thousands.

32. **Typicality— Fed. R. Civ. P. 23(a)(3).** Plaintiff and each Class member suffered economic damages that are calculable on a class-wide basis. The claims all arise from a single course of conduct and each Class member would individually make similar legal and factual arguments to establish Defendant's liability.

33. **Rule 23(b)(3) Commonality & Predominance—Fed. R. Civ. P. 23(a)(2) & 23(b)(3).** Plaintiff and the Class are united by a community of interest in obtaining appropriate remedies, including monetary, declaratory, and injunctive relief. This action involves questions of law and fact that are common to the Class that are susceptible to common answers and that predominate over any individual questions specific to any Class member. These include:

    a. Whether the Class Chargers are defective;

    b. Whether the Class Chargers are fit for their ordinary purpose;

    c. Whether the Class Chargers would pass without objection in the industry;

    d. Whether Plaintiffs and the Class Members were injured and incurred damages as a result of their purchase of Class Chargers;

    e. Whether an ordinary reasonable consumer would find the Class Chargers' defective condition to be a material term;

    f. Whether GM's conduct amounted to an unfair business practice in violation of FDUTPA;

    g. Whether and what type of relief Plaintiffs and the Class Members are entitled to receive.

34. The common issues will drive the resolution of the litigation in that their determination will resolve in one stroke issues that are central to the validity of each Class Member's claims.

35. The factual and legal issues identified above (a) remain common to the Class, (b) arise from a common course of conduct and systemic policy decisions made by Defendants, (c) predominate in number and importance over questions that may not be common to the class, and (d) preclude neither class-wide calculation of damages nor the methodological determination of how such damages should be allocated among Class Members.

36. **Adequacy of Representation— Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members. Plaintiffs commit to protecting the interests of the Class without exercising personal interest or otherwise acting in a manner inconsistent with the best interests of the Class generally. Plaintiffs have retained attorneys with exceptional experience in complex litigation. This experience includes extensive class action experience and experience in handling consumer protection cases. Plaintiffs and their attorneys will responsibly, ethically, and vigorously advocate on behalf of the Class, and Plaintiffs' counsel have ample resources to do so.

37. **Ascertainably.** The identities of the other Class Members are ascertainable from various sources including Defendant's sale and warranty records, databases, and other repositories.

38. **Predomination.** The common questions of law or fact identified above are substantially similar and predominate over those questions affecting only specific members of the Class.

39. **Superiority.** The proposed class action is superior to the other means available to the Class to obtain relief. Defendant has no facially plausible interest in defending against separate, geographically dispersed claims and, in fact, that would be more burdensome to Defendant than defending against all potential

claims in a single forum and proceeding. Likewise, the judicial system has no interest in burdening a number of courts when the claims of this highly cohesive class can be fairly and efficiently concentrated and managed by this Court.

40. **Rule 32(b) Injunctive and Declaratory Relief—Fed. R. Civ. P. 23(b)(2).** Defendant acted or refused to act on grounds generally applicable to the Class. This makes the award of equitable relief and/or restitution appropriate to the Class in their entirety.

41. **Particular Issues—Fed. R. Civ. P. 23(c)(4).** Any or all of the issues identified above are appropriate for certification pursuant to Rule 23(c)(4) because each is particular and common to the Class and the resolution of each or all would materially advance the disposition of this action and the parties' interests. Certification of particular issues would move the litigation forward efficiently, and it would save money, time, and judicial resources for all involved, regardless of whether the action as a whole might be certified.

## V. Counts

### Count I
### Violation of Florida's Deceptive and Unfair Trade Practice Act

42. Plaintiffs reallege paragraphs 1 through 41 above.

43. Plaintiffs bring this claim for violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. sections 501.202, et seq. on behalf of themselves and the Class against GM.

44. FDUTPA protects consumers from those "who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Section 501.202(2), Fla. Stat. A violation of FDUTPA may be based on "unfair, deceptive, or unconscionable acts or practices." Section 501.203(3)(c), Fla. Stat.

45. At all relevant times, Plaintiffs and the Class Members were "consumers" as defined by Fla. Stat. section 501.203(7).

46. At all relevant times, GM was and is engaged in "trade or commerce" as defined by Fla. Stat. section 501.203(8).

47. GM engaged in deceptive and unfair trade practices by:

   a. Selling the Class Chargers in a defective condition such that they could not safely and reliably perform their intended function and would instead trip and overheat;

   b. Marketing and promoting the Class Chargers as being suitable for charging electric vehicles when, in fact, they were not able to do so, reliably and properly, without tripping or overheating; and

   c. Concealing and/or failing to disclose the defective condition of the Class Chargers so that prospective purchasers could make an informed decision as to whether or not to purchase the chargers in light of their defective condition.

48. GM's actions in selling the defective Class Chargers while failing to disclose their defective condition has and continues to mislead consumers because an ordinary reasonable consumer would expect that an electric vehicle charger could reliably and safely perform its intended function of charging a vehicle without tripping or overheating.

49. As a direct and proximate result of GM's FDUTPA violations, Plaintiffs and the Class incurred actual damages, including the amount paid to purchase Class Chargers, the actual value of which was far less than what was paid considering their defective condition. Plaintiffs and the Class Members are entitled to recoup those damages in this action, along with declaratory and injunctive relief, attorney's fees, and costs.

50. Plaintiffs seek all available monetary, declaratory, and injunctive relief to which they and the Class are entitled, including all such relief identified in the Prayer for Relief below.

## Count II
## Breach of Implied Warranty

51. Plaintiffs reallege paragraphs 1 through 41 above.

52. Plaintiffs bring this claim for breach of implied warranty on behalf of themselves and the Class against GM.

53. GM impliedly warranted that the Class Chargers, which GM designed, marketed, distributed, and sold, were merchantable, fit and safe for their ordinary use, and not otherwise injurious to consumers.

54. GM breached its implied warranties for the Class Chargers because the Chargers were not fit for their ordinary purpose and were not merchantable in that they were and are prone to tripping, failing to charge, and to overheating.

55. As a direct and proximate result of GM's breach of the implied warranties, Plaintiffs and the Class suffered damages in the form of costs spent to purchase and to install the Class Chargers.

56. Plaintiffs seek all available monetary, declaratory, and injunctive relief to which they and the Class are entitled. This includes all such relief identified in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for judgment as follows:

1. For an order certifying the proposed classes;

2. For an order appointing Plaintiffs as representatives of the Class and their counsel of record as Class counsel to represent the class;

3. For an award awarding Plaintiffs and Class Members compensatory, actual, statutory, consequential, and/or any other form of damages provided by and pursuant to the causes of action cited above;

4. For an order: (1) requiring Defendants to disgorge, to restore, and to return all monies wrongfully obtained together with interest calculated at the maximum legal rate and (2) awarding Plaintiffs and the Class Members restitution, disgorgement, and/or other equitable relief provided by and pursuant to the causes of action cited above;

5. For an order awarding Plaintiffs and the Class Members declaratory relief provided by and pursuant to the statutes cited above;

6. For a declaration that Defendant's activities are unlawful;

7. For costs;

8. For an order awarding Plaintiffs and the Class Members pre-judgment and post-judgment interest; and

9. For an order awarding such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiffs and the Class hereby demand trial by jury of all issues triable by right.

Dated: October 28, 2025            Respectfully submitted,

By: __/s/William Ourand__

William Ourand (Bar No. 92503)
will.ourand@forthepeople.com
MORGAN & MORGAN
158 N. Harbor City Blvd

Melbourne, FL 32935
Tel.: (321)241-0255

Michael F. Ram
mram@forthepeople.com
Colin Losey
colin.losey@forthepeople.com
 MORGAN & MORGAN
COMPLEX LITIGATION GROUP
1390 Market St, Suite 200
San Francisco, CA 94102
Telephone: (415) 846-3862

*Attorneys for Plaintiffs and the Proposed Classes*